FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 OCT 23 P 3: 40
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RICARDO RODRIQUES CARTLEDGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 111-169 |
| | ) | |
| DENNIS BROWN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate incarcerated at Augusta State Medical Prison in Grovetown, Georgia, brought the above-captioned petition pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

In November of 1998, a Richmond County grand jury indicted Petitioner for six counts of armed robbery, seven counts of possession of a firearm during commission of a crime, one count of aggravated assault, and three counts of possession of a firearm by a convicted felon. (Doc. no. 7-9, pp. 9-23.) Following a jury trial in the Superior Court of Richmond County, Petitioner was found guilty of four counts of armed robbery and four counts of possession of a firearm during commission of a crime. (Id. at 6-8.) Petitioner received four terms of life imprisonment for armed robbery, two counts to run consecutively and two to run concurrently, and an additional five years of imprisonment for all four counts of possession of a firearm during the commission of a crime, to run consecutively. (Id. at 6.)

Petitioner was appointed new counsel after trial and filed a direct appeal in which he claimed that: (1) the evidence adduced at trial was insufficient to sustain the verdict; (2) the trial court erred in failing to grant a severance of defendants; (3) the trial court erred in admitting evidence of crimes not alleged in the indictment; and (4) the trial court erred in giving an incorrect charge on identification testimony to the jury. (Doc. no. 7-18, pp. 48-49.) On April 18, 2007, the Georgia Court of Appeals rejected Petitioner's contentions and affirmed his convictions. Cartledge v. State, 645 S.E.2d 633 (Ga. App. 2007).

On December 24, 2007, Petitioner filed a state habeas corpus petition in the Superior Court of Butts County in which he asserted the same five grounds of ineffective assistance of appellate counsel that he alleges in the instant § 2254 petition, which are described below. (Doc. nos. 7-2, 7-3.) Following evidentiary hearings held on February 6, 2009 and April 24, 2009, the state habeas court denied the petition in its entirety on March 2, 2011. (Doc. no. 7-4.) The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on September 6, 2011. (Doc. no. 7-5.)

Petitioner then timely filed the above-captioned § 2254 petition, in which he raises the following grounds for relief:

(1) Petitioner's appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on the fact that trial counsel failed to:
    (a) file a written motion for continuance to afford him more time to prepare for trial;
    (b) interview or subpoena Petitioner's alibi witnesses;
    (c) file a motion to suppress the seized evidence;
    (d) object to the State's introduction of the tape recorded interview of State witness Tonia Mercer;
    (e) object to the jury charge on conduct of the accused after commission of the offense;
    (f) object to Petitioner's bad character being injected into the issue by State witnesses Genethie Hardin and Bill Kitchen;

(g) adequately and thoroughly investigate the case and prepare an adequate defense;
(h) investigate the case, know the facts of the case, or apply the law to the case and its defense; and
(i) adhere to the statutory requirements of Official Code of Georgia Annotated ("O.C.G.A.") §§ 17-16-1, 17-16-4, 17-16-6, and 24-7-1 through 24-7-7;

(2) Petitioner's appellate counsel provided ineffective assistance based on his failure to raise on appeal the "state's suppression and/or failure to disclose pretrial Jackson-Denno Hearing transcripts and a state witness's" criminal record;

(3) Petitioner's appellate counsel provided ineffective assistance based on:
 (a) willfully and deliberately abandoning Petitioner's case, denying his right to appeal for seven years;
 (b) failing to raise an ineffective assistance of trial counsel claim;
 (c) failing to obtain pretrial transcripts, statements, and other legal documents;
 (d) failing to adequately and thoroughly investigate the case; and
 (e) failing to argue the first and third factors regarding the motion to sever the defendants from his trial in his brief to the Court of Appeals;

(4) Petitioner's appellate counsel provided ineffective assistance by failing to raise on appeal a claim that the trial court erred in denying his motion for a continuance, and by failing to obtain pretrial transcripts of the Jackson-Denno hearing; and

(5) Petitioner's appellate counsel provided ineffective assistance by causing an inordinate delay in Petitioner's appellate process, thereby violating his due process rights.

(Doc. nos. 1, 10.) In his answer and brief in support of his answer, Respondent argues that Petitioner's § 2254 claims are without merit. (See doc. nos. 6, 6-1.) Following Respondent's answer, Petitioner filed a brief in support of his claims. (Doc. no. 10.) The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into

3

law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 787 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011) (quoting Harrington, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.

4

> A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA mandates a highly deferential standard of review for state court factual determinations. With regard to factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. 290, 130 S. Ct. 841, 849 (2010) ("The term 'unreasonable' is no doubt difficult to define. It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (internal citation and punctuation omitted)). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under

a clearly erroneous standard of review." (quoting Stephens v. Hall, 407 F.3d 1195, 1202 (11th Cir. 2005) (punctuation omitted)).

**III.    DISCUSSION**

Each of the five grounds that Petitioner asserts in his petition, two of which contain a number of subparts, concern allegations that Petitioner's appellate counsel provided ineffective assistance in various ways. Given that many of the claims are duplicative or can otherwise be grouped together, the Court will accordingly address those claims together where appropriate. See infra Part III.A.

The main focus of Petitioner's claims is that appellate counsel provided ineffective assistance by: failing to raise an ineffective assistance of trial counsel claim based on a litany of alleged failures on the part of trial counsel; failing to obtain certain transcripts and other legal documents, particularly the transcript of Petitioner's Jackson-Denno hearing; and by generally failing to adequately investigate and pursue Petitioner's case, one result of which was an inordinate delay in Petitioner's appellate proceedings. (See doc. no. 1, pp. 7-11; see generally doc. no. 10.) Petitioner also raised each of the claims in the instant petition in his state habeas hearing, and the Superior Court of Butts County denied each claim on the merits.[1] (See

---

[1] The Court notes that Respondent construes Ground 1 of the instant petition as asserting new claims of ineffective assistance of trial counsel that were not raised in Petitioner's state habeas case. Respondent argues that those claims are thus procedurally defaulted and cannot be raised here. However, it appears that Ground 1 in this case is, in fact, identical to Ground 1 in the state habeas case; both claims assert ineffective assistance of appellate counsel for failure to raise a claim of ineffectiveness of trial counsel, and both claims include the same nine subparts. (Compare doc. no. 1, pp. 7-8, with doc. no. 7-3, pp. 1-2.) Although Petitioner does initially list, without elaboration, "ineffective assistance of trial counselor" as Ground 1 in his federal petition (see doc. no. 1, p. 6), the substance of the remainder of his petition (see id. at 7), as well as his brief in support of his petition (see doc. no. 10, p. 1), clarifies that Ground 1 in fact alleges ineffective assistance of appellate counsel. That being the case, there are no new claims asserted in the instant petition.

6

generally doc. no. 7-4.) Specifically applying the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), the state habeas court determined that Petitioner's appellate counsel acted within the constitutional parameters of reasonableness in his representation of Petitioner. See id.

As correctly noted by the state habeas court, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland v. Washington.[2] To make out a claim of ineffective assistance of appellate counsel, Petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, he must show that he suffered such prejudice that, but for his appellate counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. Id. at 694. The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). Moreover, because "[t]he standards created by

---

[2]The Strickland test applies to claims of ineffective assistance of both trial and appellate counsel. See Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 131 S. Ct. at 788 (quotation marks and citations omitted); Premo v. Moore, 562 U.S. ___, 131 S. Ct. 733, 740 (2011) (same).

With regard to the performance prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [appellate] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative

showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's convictions. The facts underlying Petitioner's convictions are set forth in the Georgia Court of Appeals decision and, pursuant to § 2254(e)(1), are presumed to be correct. The facts are as follows:

> The Richmond County Sheriff's Department investigated a series of armed robberies that occurred in the same general vicinity in April 1998. On April 23, 1998, shortly after one of the robberies occurred, authorities stopped a vehicle matching the description of the perpetrator's car given by a witness. The police detained the three occupants of the vehicle, Toine Daniels, Nicholas Nichols, and Tico Duncan. Daniels led the police to the home of Cartledge, the group's alleged "leader," where the police observed an automobile that matched a description of one of the vehicles involved in some of the robberies. [Genethie] Hardin—who was dating Cartledge at the time—was leaving the house when they arrived. Hardin said that Cartledge had brought home a purse that evening and would not tell her where he obtained it. The police found Cartledge inside the house and arrested him. The authorities found two semi-automatic pistols at the house, and from Hardin's car they recovered three skull caps, a ski mask, goggles, a box of .380 ammunition, a brown, hooded sweatshirt, and two pairs of gloves.

Cartledge, 645 S.E.2d at 146.

In order to assess Petitioner's claim that his appellate counsel had been ineffective, the state habeas court heard testimony from Petitioner's appellate counsel, Mr. Peter D. Johnson. At the hearing, Mr. Johnson testified that he became a member of the Georgia Bar in 1983, and that he has been employed as an attorney since that time, first as an assistant district attorney, and since then in private practice. (Doc. no. 7-6, p. 9.) He testified that his primary area of practice is criminal defense, that he has performed a substantial amount of appellate work, and

that, at the time that he was appointed to Petitioner's case, he had completed approximately twenty appellate briefs. (Id.)

In addition, Mr. Johnson testified that he reviewed the trial transcript in its entirety, corresponded with Petitioner concerning the issues that he might want to raise on appeal, and consulted with trial counsel. (Id. at 10.) Mr. Johnson recalled that he had "quite a bit of correspondence" with Petitioner, the majority of which initially concerned their efforts to obtain the trial transcript. (Id. at 11.) After obtaining the transcript in 2002, Mr. Johnson stated that he did not hear from Petitioner for approximately "a year and a half," and that it was his understanding that Petitioner had been admitted to Central State Prison with mental health issues. (Id.) Following Petitioner's return to Augusta, Mr. Johnson and Petitioner resumed correspondence and met in person to discuss what issues to raise on appeal. (Id.) Mr. Johnson stated that there was considerable disagreement as to which issues were appropriate to raise, given that Petitioner was adamant that Mr. Johnson raise certain issues that Mr. Johnson did not consider meritorious. (Id.)

In particular, Petitioner insisted that his co-defendants had given inconsistent or contradictory statements and, in the process, recanted the statements that they made prior to trial incriminating Petitioner. (Id. at 12.) Petitioner was convinced that his co-defendants made those statements at a Jackson-Denno hearing. (Id.) Mr. Johnson, however, investigated the issue and found that only a partial transcript of the hearing existed, and that it did not contain any statements exonerating Petitioner as Petitioner insisted. (Id.) Additionally, Mr. Johnson testified that, although he wished "there were more," he felt he had raised the most meritorious and valid issues on appeal. (Id. at 14.)

A.  **No Ineffectiveness for Failure to Raise Claim that Trial Counsel was Ineffective**

In Ground 1(a)-(i) and Ground 3(b), Petitioner asserts that Mr. Johnson provided ineffective assistance of counsel by failing to raise a claim on appeal that Petitioner's trial counsel was ineffective for various reasons. With regard to Petitioner's allegation, Mr. Johnson testified that, although he considered the merits of such a claim, he ultimately found that trial counsel had acted reasonably with regard to each of Petitioner's allegations concerning trial counsel's supposed ineffectiveness. (Id. at 14-20.) Specifically, with regard to each of those grounds and subparts, Mr. Johnson testified (1) that the record showed that trial counsel asked for and was denied a continuance, and that Mr. Johnson did not raise the issue on appeal because he could not show how a continuance would have benefited Petitioner (id. at 14); (2) that trial counsel subpoenaed alibi witnesses but strategically chose not to call them to testify at trial in order to preserve his closing argument (id. at 15); (3) that Petitioner's roommate consented to the search that yielded the evidence that Petitioner argues should have been suppressed, thus eliminating any reason for trial counsel to object to its introduction (id. at 15-16); (4) that State witness Tonia Mercier's tape recorded interview was introduced at trial in order to impeach her credibility, but that Mr. Johnson understood her interview to have never actually been played because she did not testify at trial, thus eliminating any reason for trial counsel to object[3] (id. at 16-17); (5) that he did not see an issue concerning the jury charge and

---

[3] In an effort to support his claim that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective, Petitioner quotes in his brief statements made by trial counsel during the state habeas hearing on April 24, 2009, and appears to attach great importance to trial counsel's deference to the record concerning Tonia Mercier's tape recorded interview, as well as trial counsel's statement "Whatever I did, I did; whatever I didn't do, I didn't do." (See doc. no. 10, pp. 9-10; see also doc. no. 7-7, p. 54.) From the transcript, however, it is clear that trial counsel simply did not recollect the details of events that had taken place more than a decade prior to the state habeas hearing (see doc. no. 7-7, p. 52), and that his deference to the record and quoted statement are thus not plainly indicative of ineffectiveness

11

was not aware of any case law suggesting that the charge might be burden-shifting (id. at 17); (6) that the record did not support Petitioner's allegation that witnesses Genethie Harden and Bill Kitchens put Petitioner's "bad character" at issue, given that Mr. Johnson did not see any extrinsic bad character evidence from either witness (id.); (7) that, despite trial counsel being "relatively inexperienced," Mr. Johnson did not see anything indicating that trial counsel was unprepared for trial (id. at 17-18); (8) that trial counsel objected to the admission of a letter Petitioner wrote to his co-defendant that Petitioner argues was "unreliable and unauthenticated" (id. at 18-19); and (9) that he did not see any merit to the claim that the State "failed to disclose" Petitioner's criminal record (id. at 19-20).

Essentially, Mr. Johnson testified that he reviewed Petitioner's claims regarding Petitioner's trial counsel and determined that they were not meritorious. (Id. at 14-20.) Based on the trial record, Mr. Johnson's qualifications, and Mr. Johnson's testimony, the state habeas court specifically applied the standards set forth in Strickland to each of the above claims and determined that Petitioner had not received ineffective assistance of appellate counsel based on appellate counsel's failure to bring claims based on the alleged ineffectiveness of trial counsel. (Doc. no. 7-4, pp. 16–19.) Moreover, Plaintiff fails to demonstrate in the instant petition or his brief that the state habeas court unreasonably applied Strickland to the facts of his case: as the state habeas court found, each of Petitioner's allegations concerning trial counsel's ineffectiveness is either mis-characterized, conclusory, or explainable as being within trial counsel's discretion to develop a trial strategy, and accordingly Mr. Jones was not ineffective in failing to bring a claim that trial counsel was ineffective on those grounds. (Id.)

---

as Petitioner seems to imply.

B.   **No Ineffectiveness for Failure to Raise Claim Concerning Jackson-Denno Hearing**

Ground 2, the second half of Ground 4, and, impliedly, Ground 3(c), concern the transcript of Petitioner's pre-trial Jackson-Denno hearing: specifically, Petitioner claims that Mr. Johnson provided ineffective assistance in failing to obtain Petitioner's pre-trial Jackson-Denno hearing transcript – as well as statements and legal documents in general, in this case of Ground 3(c) – and in failing to raise on appeal the issue of the state's suppression of, or failure to disclose, that transcript. Mr. Johnson testified that he had access to trial counsel's file, including discovery materials, that he looked it over, and that he had no reason to believe that the discovery material given to counsel for Petitioner's co-defendants would have been any different from what he was given. (Doc. no. 7-6, p. 23.) As mentioned above, Mr. Johnson also testified that he was unable to locate a complete transcript of the hearing, and that, furthermore, he was unable to confirm through counsel that had attended the hearing that the mass recantation that Petitioner alleged to have taken place did, in fact, occur.[4] (Id. at 12, 25.) The state habeas court found Petitioner failed to meet his burden under Strickland regarding his claim concerning Mr. Johnson's failure to obtain the transcript, noting that it "credited the testimony of both trial and appellate counsel" that only a partial transcript was available, that

---

[4]In his brief, Petitioner attempts to show that Mr. Johnson provided ineffective assistance by quoting a statement that Mr. Johnson made during the first state habeas evidentiary hearing on February 6, 2009. (See doc. no. 10, p. 11.) In that statement, Mr. Johnson noted that, were the situation concerning the Jackson-Denno hearing how Petitioner described it, such that trial counsel had possession of a complete transcript that contained exculpatory remarks made by Petitioner's co-defendants, then trial counsel was ineffective for failing to use that information, and Mr. Johnson was himself ineffective in failing to later discover that trial counsel had that information and in then failing to use that information on appeal. (Id.) However, it is clear from both the transcript and the quote itself that Mr. Johnson did not intend his hypothetical statement as an implicit admission of ineffectiveness, especially considering that the crux of the conversation from which the quote is taken concerned the fact that trial counsel *did not* have that information and that only a partial transcript of the hearing had ever been shown to exist. (See doc. no. 7-6, pp. 72-76.)

13

both attorneys "exhausted all means to secure the transcript in its entirety," and that the claim was thus without merit. (Doc. no. 7-4, p. 19.) The state habeas court further held that Petitioner failed to demonstrate that, had Mr. Johnson been able to procure the entire transcript, there was a reasonable probability that the outcome of Petitioner's appeal would have been different, considering that Petitioner's only proof as to the transcript's contents was his own self-serving testimony. (Id. at 19-20.) Moreover, Petitioner offers nothing in the instant petition or brief to explain how the state habeas court unreasonably applied Strickland to the facts of his case, given that only a partial transcript of the Jackson-Denno hearing was ever shown to exist, and that the partial transcript did not contain any information pertinent to Petitioner's appeal.

### C. No Ineffectiveness for Failure to Adequately Investigate Case

As to Ground 3(d), in which Petitioner generally claims that Mr. Johnson failed to adequately and thoroughly investigate his case, Mr. Johnson testified that, although he did not conduct an independent investigation concerning the underlying facts of the case, given that he did not see Petitioner's guilt or innocence as being at issue (Doc. no. 7-6, p. 23), he did review the record and the trial transcript, corresponded with Petitioner concerning potential issues to raise on appeal, and consulted with trial counsel (id. at 10). The state habeas court agreed that Petitioner's guilt or innocence was not at issue, given the "sufficient evidence implicating Petitioner in the crimes." (Doc. no. 7-4, p. 23.) The state habeas court also found that Mr. Johnson effectively "winnowed down the issues to the ones he believed were the most viable and meritorious issues on appeal," noting that, although Mr. Johnson did not raise every issue set forth in his amended motion for new trial, "the process of 'winnowing' out weaker issues and focusing on issues more likely to prevail is a hallmark of effective appellate advocacy."

(Id. at 15) (citing Smith v. Murray, 477 U.S. 527, 536 (1986)). Finally, the state habeas court noted that, following Petitioner's incarceration at Central State Prison, Mr. Johnson and Petitioner "collectively worked on the motion for new trial and appeal." (Id. at 21.)

### D. No Ineffectiveness for Failure to Effectively Argue for Severance from Co-Defendant

As to Ground 3(e), in which Petitioner claims that Mr. Johnson failed to effectively argue that Petitioner's case should be severed from that of a co-defendant, Mr. Johnson noted that he *did* argue the point, asserting that there might be "spillover prejudice" to Petitioner, but that the Court of Appeals noted that he had "a fairly limited attack on the severance issue" and found that the jury was able to sufficiently differentiate the evidence to discern what was attributable to Petitioner. (Doc. no. 7-6, pp. 23-24.) The state habeas court credited Mr. Johnson's testimony, finding that, as Mr. Johnson stated, he raised the issue but that the Court of Appeals found that severance of the cases was unnecessary. (Doc. no. 7-4, pp. 10-11.) Moreover, per the second prong of Strickland, the state habeas court found that, wholly separate from the testimony of his co-defendants that Petitioner asserted might result in prejudice to himself, there was sufficient other evidence implicating Petitioner in the crimes, including: testimony from his co-defendants that he participated in the armed robberies; a victim's identification of Petitioner as the assailant; two victims' identifications of a gun recovered from Petitioner's girlfriend's vehicle as the gun used in the robberies; the recovery of a victim's purse from the residence where Petitioner was arrested; and the discovery of clothing in Petitioner's car that matched a victim's description of that worn by one of the robbers. (Id. at 17, 23.)

### E. No Ineffectiveness for Failure to Raise Claim that Trial Court Erred in Denying Continuance

The first half of Ground 4 presents a claim that is similar to Ground 1(a); in Ground 4, Petitioner claims that Mr. Johnson provided ineffective assistance by failing to raise a claim on appeal that the trial court erred in denying Petitioner's oral motion for a continuance. As such, the claim in Ground 4 presents a slight modification of the claim in Ground 1(a), in which Petitioner claims that Mr. Johnson provided ineffective assistance by failing to raise a claim on appeal that trial counsel provided ineffective assistance by failing to file a written motion for a continuance. The analysis for Ground 4, however, remains the same: Mr. Johnson testified that, essentially, he did not see any merit to pursuing a claim based on the denial of trial counsel's oral motion for a continuance. (Id. at 14.) Specifically, without any actual evidence supporting Petitioner's claims concerning the alleged statements made at the Jackson-Denno hearing, Mr. Johnson could not show how a continuance would have made any difference in the outcome of Petitioner's case. (Id. at 14-15.) The state habeas court agreed, applying the second prong of the Strickland analysis and holding that Petitioner failed to show how a granted continuance would have "changed the trial court's ruling or [to] otherwise establish a reasonable probability that the outcome" would have been different. (Doc. no. 7-4, p. 16.)

### F. No Ineffectiveness Based on Claim that Appellate Counsel Abandoned Case and Caused Inordinate Delay

As to Ground 5 and Ground 3(a), in which Petitioner argues that Mr. Johnson provided ineffective assistance by abandoning Petitioner's case and thereby causing an inordinate delay, Mr. Johnson testified that it took three years for him to acquire the trial transcript from the court reporter, and that, when he finally acquired it, he attempted to contact Petitioner and learned that he was at Central State Hospital. (Doc. no. 7-6, pp. 20-21.) Mr. Johnson recalled speaking

16

to a member of Petitioner's family, who told him not to continue pursuing the appeal until he was contacted by Petitioner or his family. (Id. at 21.) In 2005, approximately one-and-a-half years later, Mr. Johnson stated that he was was contacted by Petitioner, at which point he promptly resumed work on the case. (Id.) Mr. Johnson and Petitioner collectively worked on the motion for a new trial, a hearing for which was held in June 2006, as well as Petitioner's appeal, which was filed in September 2006.[5] (Id.) The state habeas court noted that "the length of delay that will raise a constitutional inquiry is dependent upon the circumstances of the case," and held that, given that much of the delay in Petitioner's case was due to the three year preparation of the trial transcript and the instructions to Mr. Johnson not to work on the appeal pending Petitioner's recovery, the seven-year delay was not presumptively prejudicial. (Doc. no. 7-6, pp. 21-22) (citing Chatman v. Mancill, 280 Ga. 253 (2006)). Moreover, the court found that the record did not show that Petitioner made any efforts to inquire about the status of his appeal. (Id.) Finally, per the second prong of Strickland, the court found that Petitioner failed to show any prejudice to his appeal attributable to the delay, especially in light of the evidence against him, as laid out infra Part III.D.[6] (Id.) Petitioner offers nothing in the instant

---

[5] In his brief, Petitioner argues that he was actually only at Central State Hospital for a period of one month, and that work on his appeal was not resumed until the "filing of a writ of habeas corpus in the Mitchell County Superior Court" in 2006. (Doc. no. 10, p. 13.) Petitioner's statement, however, is not inconsistent with Mr. Johnson's testimony that he ceased working on Petitioner's case in 2005 when he spoke to Petitioner's family, and then resumed work when Petitioner contacted him in 2006.

[6] In arguing in his brief that Mr. Johnson provided ineffective assistance, Petitioner again attempts to take out of context and mischaracterize a statement made during an evidentiary hearing: Petitioner alleges that Mr. Johnson stated that, concerning the long delay in Petitioner's case, "[Mr. Johnson would] agree that [Petitioner has] been deprived of a constitutional right." (Id. at 14.) However, the transcript reveals that, in actuality, Mr. Johnson stated that "[I]f because of the lapse of time you are denied your ability to prove your allegations, then yeah... you've been deprived of a constitutional right." (Doc. no. 7-6, pp. 87-88.) As explained, Petitioner has not shown any prejudice due to the delay, and Mr. Johnson's statement does not somehow prove that Petitioner was deprived of any constitutional rights.

petition or his brief to show that the state habeas court incorrectly applied Strickland; even if the Court were to construe the delay in Petitioner's appeal as being entirely the fault of Mr. Johnson – which it does not, as explained above – Petitioner has not shown that he suffered any prejudice as a result of that delay. Petitioner offers only speculation as to the alleged impact of Mr. Johnson's supposed errors, and simply does not offer the Court any basis upon which to conclude that he suffered any actual prejudice because of Mr. Johnson's performance.

Finally, the Court notes that Petitioner offers no additional evidence, much less "clear and convincing evidence," in his federal habeas petition to undermine or contradict the factual determinations of the state court. Accordingly, it cannot be said that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Moreover, as explained above, the state habeas court's decision was neither contrary to Strickland nor unreasonably applied Strickland to Petitioner's ineffective assistance of appellate counsel claims, and Petitioner is thus not entitled to habeas relief based on his claims in the instant federal petition.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 23rd day of October, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE